

FILED

SEP 2 4 2010

CLERK U.S. DISTRICT COURT
RICHMOND VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LAMONT MARQUISE JOHNSON,   )
                                     )
      Petitioner,              )
                                     )
v.                                  )     Civil Action No. 3:09CV465-HEH
                                     )
DIRECTOR, DEPARTMENT OF    )
CORRECTIONS               )
                                     )
      Respondent.          )

**<u>MEMORANDUM OPINION</u>**
**(Denying 28 U.S.C. § 2254 Petition)**

Lamont Marquise Johnson ("Petitioner"), a Virginia inmate proceeding *pro se*,

brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner

contends that he is entitled to relief upon the following grounds:

| | |
|---|---|
| Claim One | Petitioner did not receive the effective assistance of counsel because counsel failed to conduct an adequate investigation and pursue a pretrial motion to suppress Cynthia Williams's identification of Petitioner. |
| Claim Two | The evidence was insufficient to convict Petitioner because the prosecution failed to muster enough credible evidence identifying Petitioner as the perpetrator of the robbery and associated crimes. |
| Claim Three | Petitioner did not receive the effective assistance of counsel because counsel failed "to present adequate court strategy" and failed to "obtain[] favorable exculpatory documents." (Br. Supp. § 2254 29.)[1] |

---

[1] The Court has corrected the capitalization in quotations to Petitioner's submissions.

| | |
|---|---|
| Claim Four | The prosecution engaged in misconduct. |
| Claim Five | Petitioner's trial transcript is a fraudulent document. |
| Claim Six | The trial court violated Petitioner's right to cross-examine witnesses. |
| Claim Seven | The trial judge engaged in misconduct. |
| Claim Eight | Petitioner was denied a fair trial by the false testimony of Cynthia Williams. |
| Claim Nine | Petitioner was denied a fair trial by the false testimony of Lisa Keeling. |
| Claim Ten | Petitioner was denied a fair trial by the false testimony of Lonnie Perry. |
| Claim Eleven | Petitioner was denied a fair trial by the false testimony of the Police Officers Centeno, Lee, Hamby, Cosca, and Heckman. (Br. Supp. § 2254 66.) |
| Claim Twelve | The cumulative effect of the above violations denied Petitioner a fair trial. |

Respondent has moved to dismiss on the grounds that Claims Two through Twelve are procedurally defaulted and Claim One lacks merit. Petitioner has responded. The matter is ripe for disposition.

## I. PROCEDURAL HISTORY

### A. Trial

Petitioner was tried by a jury in the Circuit Court for the City of Norfolk on charges of robbery, armed burglary, and two counts of use of a firearm during the commission of a felony ("Circuit Court"). At trial, Cynthia Williams ("Williams") testified that Petitioner

and Randolph Brown ("Brown") approached her as she was entering her home. Petitioner had a gun and told Williams to open the door. Petitioner went upstairs and rummaged through Williams's belongings. Petitioner then told Williams that he was going to shoot her if she did not reveal where her husband kept his money and drugs. Petitioner then directed Brown to take Williams's keys and check the trunk of her car. Brown took Williams's keys, which were attached to a pouch containing $102.00, and checked the trunk of Williams's car. Shortly thereafter, Brown and Petitioner left Williams's home. Neither man returned the keys or the money prior to departing.

At the close of the prosecution's case, counsel for Petitioner moved to strike on the grounds that there was insufficient evidence that either Brown or Petitioner was aware of the money contained in the pouch and thus they lacked the requisite intent to commit robbery. (Trial Tr. at 135-37.) The Circuit Court denied the motion. Counsel renewed his motion to strike "for the same reasons previously argued." (Trial Tr. at 151.) The Circuit Court then denied the motion for reasons previously stated. The jury then convicted Petitioner of robbery, armed burglary, and two counts of use of a firearm during the commission of a felony. The Circuit Court sentenced Petitioner to an active term of imprisonment of twenty-eight years.

## B. Direct Appeal

Petitioner appealed his convictions to the Court of Appeals of Virginia. Petitioner raised three claims for relief. First, Petitioner asserted that the Circuit Court erred in

denying his motion to strike because the evidence was insufficient to demonstrate that "sufficient items had been taken in [Williams's] presence to rise to robbery, thus not sufficient evidence to prove that offense as well as not sufficient evidence to prove the other three remaining charges which all related to a robbery type taking." (Court of Appeals of Va. Rec., Petr.'s Pet. Appeal ("Petr.'s App. Br. 2").) Second, Petitioner asserted the Circuit Court had erred when it refused to set aside the jury's verdict because the jury returned the verdict without spending adequate time in deliberation. Third, Petitioner asserted that the Circuit Court erred in denying his motion to strike because "there was insufficient evidence that Defendant was the one who committed the acts alleged against him in that with the inconsistencies in the evidence, there exits a reasonable hypothesis of innocence." (Petr.'s App. Br. 3.) The Court of Appeals of Virginia concluded that Petitioner's first argument lacked merit. *Johnson v. Commonwealth*, No. 1045-06-1, slip op. at 2 (Va. Ct. App. Oct. 23, 2006). Additionally, as is pertinent here, the Court of Appeals of Virginia refused to review Petitioner's third argument because: "Appellant did not move to strike the evidence or set aside the verdict because the identification evidence was in conflict. Accordingly, we will not consider this issue on appeal. Rule 5A:18." *Id.* at 3.

Petitioner then sought review by a three-judge panel of the Court of Appeals of Virginia. On December 29, 2006, the three-judge panel denied Petitioner's petition for

appeal for the reasons in the October 23, 2006 opinion. *Johnson v. Commonwealth*, No. 1045-06-1, slip op. at 1 (Va. Ct. App. Dec. 29, 2006).

Thereafter, Petitioner pursued an appeal to the Supreme Court of Virginia wherein he raised the same three arguments. On June 26, 2007, the Supreme Court of Virginia summarily refused Petitioner's petition for appeal. *Johnson v. Commonwealth*, No. 070061, slip op. at 1 (Va. June 26, 2007).

### C.   State Habeas

On September 15, 2008, Petitioner filed a petition for a writ of habeas corpus with the Circuit Court. Petitioner asserted that he was denied the effective assistance of counsel because:

> Claim A    Counsel failed "to conduct an adequate pretrial factual and legal investigation in order to move the trial court on motion to suppress the eyewitness identification before trial." (Circuit Court Habeas R. at 47.)
>
> Claim B    Counsel failed "to make [a] motion to strike at the conclusion of all evidence, or make a motion to set aside the verdict, in order to preserve on appeal the question of sufficiency of the eyewitness identification evidence." (Circuit Court Habeas R. at 53.)

The Circuit Court denied Petitioner's petition for a writ of habeas corpus. (Circuit Court R. at 71-77.) Petitioner appealed. On April 29, 2009, the Supreme Court of Virginia refused the petition for appeal on the ground that "the appeal was not perfected in the manner provided by law because the petition for appeal does not contain sufficient

assignments of error that comply with the requirements of Rule 5:17(c)." *Johnson v.*

*Everett*, No. 090027, slip op. at 1 (Va. Apr. 29, 2009).

On July 20, 2009, this Court received Petitioner's current § 2254 petition.

## II. EXHAUSTION AND PROCEDURAL DEFAULT

State exhaustion "'is rooted in considerations of federal-state comity,'" and in

Congressional determination via federal habeas laws "that exhaustion of adequate state

remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d

473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10

(1973)). The purpose of the exhaustion is "to give the State an initial opportunity to pass

upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404

U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects.

First, a petitioner must utilize "all available state remedies before he can apply for federal

habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Matthews v.*

*Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). As to whether a petitioner has used all

available state remedies, the statute notes that a habeas petitioner "shall not be deemed to

have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented." 28

U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state's

courts an adequate opportunity to address the constitutional claims advanced on federal

habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (citing *Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available

state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[2] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

## A. Claims Two Through Twelve Are Defaulted

Although Petitioner presented Claim Two to the Court of Appeals of Virginia and the Supreme Court of Virginia, those courts refused to examine the merits of Claim Two because Petitioner failed to comply with the contemporaneous objection rule set forth in Virginia Supreme Court Rule 5A:18.[3] Rule 5A:18 constitutes an adequate and independent procedural rule. *See Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000); *see also Williams v. Commonwealth*, 662 S.E.2d 627, 630 n.4 (Va. Ct. App. 2008)

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (citing *Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

[3] That rule provided that, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Va. Sup. Ct. R. 5A:18 (Michie 2005). Because the Supreme Court of Virginia summarily rejected Johnson's petition for appeal, it is presumed that it dismissed Claim Two for the reasons stated by the Court of Appeals of Virginia. *See White v. Johnson*, No. 2:05cv365, 2006 WL 2520113, at *4 (E.D. Va. Aug. 25, 2006) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

(refusing to consider on appeal new arguments as to why the evidence was insufficient).

Thus, Claim Two is procedurally defaulted.

Claims Three through Twelve were never presented to the Supreme Court of

Virginia. Were Petitioner now to attempt to present these claims to that court, they would

be barred by section 8.01-654(B)(2) of the Virginia Code.[4] Section 8.01-654(B)(2)

constitutes an independent and adequate state procedural rule. *See George v. Angelone*,

100 F.3d 353, 363-64 (4th Cir. 1996). Thus, Claims Three through Twelve are

procedurally defaulted.

### B. Petitioner Has Not Demonstrated Any Basis for Excusing His Default

Although Petitioner mentions "cause" and "fundamental miscarriage of justice," he

fails to demonstrate any basis for excusing his default. Cause to excuse a procedural

default refers to "some objective factor external to the defense [that] impeded counsel's

[or petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*,

527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Except for Claim Two, Petitioner does not identify any such external factor that prevented

him from complying with the relevant state procedural rules.[5] With respect to Claim Two,

---

[4] That statute provides, in pertinent part, that a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2010).

[5] Instead, he merely states, "Each and every claim established prejudice and cause, which means the state court applied the wrong standard of proof in denying petitioner's petition." (Petr.'s Reply Br. Respt.'s Mot. Dismiss 6-7.)

Petitioner asserts that the Court should excuse his default because it is attributable to the constitutionally deficient performance of trial counsel. Nevertheless, "ineffective assistance [of counsel] adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Therefore, a claim of ineffective assistance counsel "must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id.* at 452. (quoting *Carrier*, 477 U.S. at 489)). Furthermore, the "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Id.* at 453. That is the case here.

Petitioner did not fairly present to the Supreme Court of Virginia a claim that counsel was deficient for failing to challenge the sufficiency of evidence on the grounds Petitioner argues in Claim Two. Were he to attempt to do so now, that Court would find such a claim barred by section 8.01-654(B)(2) of the Virginia Code. Accordingly, Petitioner's assertion of cause is rejected.

Furthermore, Petitioner has failed to advance any plausible basis for reviewing his defaulted claims on the grounds that he is actually innocent. *See McBrayer v. Johnson*, 3:09cv00411, 2010 WL 723675, at *3 (E.D. Va. Mar. 2, 2010) (Lauck, J.) (rejecting petitioner's fundamental miscarriage of justice claim that was not a claim of actual innocence). "[P]risoners asserting innocence as a gateway to defaulted claims must

establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "[A] gateway claim requires 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" *Id.* at 537 (quoting *Schulp*, 513 U.S. at 324). Here, Petitioner has failed to introduce any new reliable evidence of his innocence. Instead, he merely argues that the evidence at trial was insufficient. Such argument cannot support a viable claim of actual innocence. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997). Petitioner has failed to demonstrate any basis for excusing his defaults. Accordingly, Claims Two through Twelve will be dismissed.

### III. Alleged Ineffective Assistance of Counsel

To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In

analyzing ineffective assistance of counsel claims, it is not necessary to determine whether

counsel's performance was deficient if the claim is readily dismissed for lack of prejudice.

*Id.* at 697.

In Claim One, Petitioner contends that had counsel conducted a proper

investigation, counsel would have moved pretrial for the suppression of Cynthia

Williams's testimony pursuant to *Neil v. Biggers*, 409 U.S. 188 (1972). The Supreme

Court has outlined a two-step approach to determine the admissibility of identification

testimony. First, the defendant must prove that the identification procedure was

impermissibly suggestive. *Holdren v. Legursky*, 16 F.3d 57, 61 (4th Cir. 1994) (citing

*Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). "Second, even if the procedure was

suggestive, the in-court identification is valid provided the identification is reliable."

*United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997) (citing *United States v.*

*Wilkerson*, 84 F.3d 692, 695 (4th Cir. 1996)). Furthermore, "without determining whether

[a petitioner] has met the threshold requirement of suggestiveness, [a court] may proceed

directly to the reliability of the identification." *Holdren*, 16 F.3d at 61-62 (citing *United*

*States v. Dorta*, 783 F.2d 1179, 1183 (4th Cir. 1986)). That is the proper course here.

The reliability of eyewitness identifications are assessed "under the totality of the

circumstances," *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997), in light of the five

factors identified by the Supreme Court in *Neil v. Biggers*. Relevant factors include, but

are not limited to:

> (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention at the time; (3) the accuracy of the witness's initial description of the suspect; (4) the witness's level of certainty in making the identification; and (5) the length of time between the crime and the identification.

*United States v. Saunders*, 501 F.3d 384, 391 (4th Cir. 2007) (citing *Johnson*, 114 F.3d at

441), *cert. denied*, 552 U.S. 1157 (2008). "In addition, courts may 'consider other

evidence of the defendant's guilt when assessing the reliability of the . . . identification.'"

*Id.* at 391-92 (omission in original) (quoting *Wilkerson,* 84 F.3d at 695). "Against these

factors is to be weighed the corrupting effect of the suggestive identification itself."

*Brathwaite,* 432 U.S. at 114.

Because the Court concludes that Williams's in-court identification of Petitioner

was entirely reliable, the Court does not determine whether the initial identification was

unduly suggestive. Nevertheless, because any "corrupting effect" of the allegedly unduly

suggestive identification is pertinent to the reliability determination, it is appropriate to

recount the facts pertinent to the alleged unduly suggestive identification. *Id.*

## A.     Initial Identification

On January 17, 2005, around 10:30 p.m., Officer Roderick Allen Cosca received a

report of a home invasion in the 1400 block of Lois Lane in the City of Norfolk. (Trial

Tr. 12.) Officer Cosca then received a report that a white, four-door vehicle had left that

location. (Trial Tr. 13.) Officer Cosca observed a vehicle matching the above description

fleeing from that area and gave chase. (Trial Tr. 13-20.) The vehicle eventually was

stopped by the police and the police apprehended the four individuals riding in the

vehicle: Petitioner, Randolph Brown, Lonnie Perry, and Travis Cherry. (Trial Tr. 20, 45,

50.)

The police then brought these four individuals back to Williams's residence.

(Trial Tr. 78, 82, 89.) Williams identified Petitioner and Brown as the individuals who

had forced their way into her house at gun point.[6] (Trial Tr. 89; Sent'g Tr. 8.)

## B.    Williams's In-Court Identification

The Circuit Court made the following factual findings with respect to Williams's

identification of Petitioner as one of the robbers:[7]

> First, Williams had ample opportunity to view the petitioner at the time of the
> crime. The petitioner and Randolph Brown entered her home unmasked. She
> was with them for a significant period of time; the lighting permitted a good
> view of the petitioner. Second, the high level of attention to the incident is
> clear. Williams accompanied the petitioner upstairs and directed him to her
> husband's dresser. Third, her physical description of the petitioner appears
> from the record to have been accurate. Finally, Williams was 100% positive
> of her identification.
>     It is noteworthy that petitioner was one of four suspects, as opposed to
> the sole suspect, brought back to the scene for identification. And, the
> reliability of Williams' identification is substantiated by her daughter's, who
> also independently identified petitioner from viewing him during the course
> of the robbery. Finally, the testimony of Lonnie Perry placed petitioner and
> Perry's nephew, Randolph Brown, at the scene.

---

[6] Williams did not recognize either Perry or Cherry. (Sent'g Tr. 8.)

[7] The factual findings are presumed correct absent clear and convincing evidence to the
contrary. *See* 28 U.S.C. § 2254(e)(1).

*Johnson v. Warden*, Docket No. CR 05002204-00-01/F05, File No. L-08-5727, slip op. 5

(Cir. Ct. Oct. 21, 2008). The relevant factors overwhelmingly support the reliability of

Williams's identification of Petitioner.[8] Williams had a lengthy and fulsome opportunity

to view her assailant. *Biggers*, 409 U.S. at 199. Williams's testimony at trial indicated

that she was paying a great deal of attention. *Id.* Less than a year passed before Williams

identified Petitioner at trial, at which time she stated that she was "[a] hundred percent

sure" of her identification of Petitioner as one of the robbers. (Trial Tr. 89.)

Furthermore, the corroborative testimony of Williams's daughter and Lonnie Perry

bolstered the reliability of Williams's identification of Petitioner. *Biggers*, 409 U.S. at

199-200. Given the mildly suggestive nature of the initial identification, Petitioner has

not demonstrated Williams's in-court identification was in any way unreliable.[9]

---

[8] It is not clear from the record what exact description, if any, Williams provided to the police. Petitioner suggests that if counsel had obtained Williams's initial description of the robbers to the police, it would have helped his case. Petitioner, however, has not identified any specific facts to support this assertion. Indeed, the evidence before the Court indicates that any description Williams initially provided to the police with respect to the description of the robbers was consistent with Petitioner's appearance. Specifically, trial counsel moved for discovery of, *inter alia*, any impeachment evidence in the hands of Commonwealth. (Circuit Court R. at 13.) Although the Commonwealth apparently provided counsel with the requested discovery material, no police reports were provided. (§ 2254 Br. Exs. G, H, I.)

[9] Petitioner persists that Williams's uncertainty about the robber's clothing renders her identification unreliable. Petitioner is wrong. At trial, Williams testified that Petitioner was wearing "[a] white T-shirt and flight jacket and that's all I can remember." (Trial Tr. 82.) When questioned by counsel regarding this jacket, Williams explained that "it wasn't a leather jacket" (Trial Tr. 82), rather it was "[a] blue jean - - a jacket." (Trial Tr. 82.) Petitioner's own submissions reflect that Williams's identification of him was accurate and reliable. According to Petitioner, he "was wearing a denim jean . . . jacket." (§ 2254 Br. 11.) Furthermore, the intake records from the Norfolk City Jail reflect that when Petitioner was brought to the jail he was wearing a blue coat. (§ 2254 Br. Ex. F(A).) Contrary to Petitioner's suggestion, the foregoing facts further demonstrate the reliability of Williams's identification of him as one of the robbers.

Accordingly, Claim One will be dismissed because Petitioner has not demonstrated that he was prejudiced by counsel's failure to file a pretrial motion to suppress.

## IV. Conclusion

The motion to dismiss will be granted. The petition for a writ of habeas corpus will be denied. The action will be dismissed.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Petitioner is entitled to further consideration in this matter. A certificate of appealability is therefore denied.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Sept. 24 2010
Richmond, Virginia

16